**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**OHIO STATE TROOPERS ASSOCIATION, INC,**
**INTERNATIONAL UNION OF POLICE**
**ASSOCIATIONS, TREVOR KOONTZ, RYAN**
**PURPURA and STEVEN ROHNER**                    **CASE NO.**

        **Plaintiffs,**

**vs.**

                                   **DEMAND FOR JURY TRIAL**

**POINT BLANK ENTERPRISES, INC.**

        **Defendant.**

_____

## COMPLAINT – CLASS ACTION

Plaintiffs, Ohio State Troopers Association, Inc., International Union of Police Associations, Trooper Trevor Koontz, Sergeant Ryan Purpura, and Trooper Steven "Eric" Rohner (collectively "Plaintiffs" or "Named Plaintiffs" and Koontz, Purpura and Rohner collectively "Individual Plaintiffs"), individually and on behalf of all persons similarly situated, by their undersigned counsel, pursuant to Rule 23, Fed.R.Civ.P., and Local Rule 23.1, file this Class Action Complaint against defendant Point Blank Enterprises, Inc. and, in support hereof, allege upon personal knowledge as to their own acts and status, and otherwise upon information and belief based upon the investigation of counsel, as follows:

### INTRODUCTION

1.    Point Blank Enterprises, Inc. ("PBE" or "Defendant") is one of the world's largest manufacturers of law enforcement and military protective products, including ballistic resistant soft body armor (commonly referred to as bullet resistant vests) which PBE sells through various channels (directly, through manufacturer sales representatives employed by PBE, or through authorized distributors and representatives) to police officers and others all across the United

1

States and the world.  PBE manufactures these products through wholly-owned subsidiaries and/or brand names, including, Point Blank Body Armor, Inc. ("PBBA"), Paraclete, Protective Products Enterprises, Protective Apparel Corporation of America ("PACA") and others.

2.     This action arises from the sale of defective PBBA and PACA model vests (and private label versions of those vests) manufactured by PBE containing what Defendant touts in its marketing materials as a proprietary and exclusive "Self-Suspending Ballistic System (SSBS)" feature ("SSBS Vests").  As described below, the SSBS Vests are represented and warranted to have certain qualities and performance characteristics which, in fact, they do not have.  The SSBS Vests pose a life-threatening safety issue and cannot be reasonably relied upon for their intended use.  Defendant breached its express and implied warranties, and misrepresented and omitted material facts regarding the quality, condition, suitability and safety of the SSBS Vests, and concealed that these vests contain a manufacturing defect which has created an imminent and substantial danger and risk of injury and death to the Individual Plaintiffs and others who use and depend upon the vests, many of whom are law enforcement officers whose job it is to protect the public.  The defects in the SSBS Vests manifest and are present when the vests exit the manufacturing line and cannot be detected by class members until the vests fail.  Defendant has concealed the defects in the SSBS Vests, has refused to notify any purchasers or users of the defects in the SSBS Vests and has refused to recall them.[1]  All conditions precedent to bringing this action have been satisfied or waived.

---

[1] Defendant has a past history of selling defective ballistic vests, denying that its vests had manufacturing defects and affirmatively attempting to conceal the defects.  Those actions resulted in several class action lawsuits in Florida and elsewhere (including an investigation and suit by the United States under the False Claims Act, 31 U.S. Code §§ 3729-3733) that resulted in the recall and replacement of tens of millions of dollars of ballistic vests as well as a $1,000,000 settlement with the United States.  *United States v. Point Blank Body Armor, Inc., et al.*, Case No. 1:10-cv-01716 (D.D.C. 2010); *Southern States Police Benevolent Association, Inc., et al. v. Point Blank Body Armor, Inc.*, CACE05000084 (Seventeenth Cir. Broward Co., Fla.); *Jamie Norris, et al. v. Protective Apparel Corp. of America, et al.*, CACE05012961

**THE PARTIES**

**Plaintiffs**

3.      Plaintiff Ohio State Troopers Association, Inc. ("OSTA") is a membership organization whose members are Ohio State Highway Patrol Troopers ("Troopers") and others. OSTA exists to protect and advance the interests of its membership and is the sole and exclusive bargaining agent for approximately 1,500 Troopers (including the Individual Plaintiffs) as well as sergeants, dispatchers, and others.  Its members have purchased or wear the defective SSBS Vests.  OSTA has directly incurred financial loss in time and money, including purchasing and providing replacement vests for the defective SSBS Vests when PBE refused to do so.  OSTA's obligations for Troopers' safety directly invoked its involvement here because, among other reasons, there is a mandatory "wear policy" for all Troopers, requiring officers to wear bullet resistant vests at all times, and the SSBS Vests cause a safety risk.  OSTA is a Plaintiff for purposes of the injunctive relief sought in the Fourth Claim for Relief.

4.      Plaintiff International Union of Police Associations ("IUPA") is organized and licensed in the State of Florida and maintains its headquarters in Sarasota, Florida.  Founded in 1966, it is the only AFL-CIO union chartered exclusively for law enforcement and law enforcement support personnel.  IUPA's membership of thousands of active and retired law enforcement officers fight to improve the lives of their brothers and sisters in law enforcement. IUPA also works to improve legislation that protects and affects public safety officers, as well as representing the needs of law enforcement officers and support personnel, whether that be for safe and better equipment, more staff or a fair wage.  The prime directive for any law enforcement entity, whether it be a department, agency, or a labor union representing officers, is

---

(Seventeenth Cir. Broward Co., Fla.); *Thomas Kiefer, et al. v. Protective Products International*, CACE05016039 (Seventeenth Cir. Broward Co., Fla.).

officer safety.  IUPA has incurred time and expense in connection with the unacceptable safety risks the defective SSBS Vests have subjected its members to, including many of its members in Florida that have SSBS Vests.  IUPA is a Plaintiff for purposes of the injunctive relief sought in the Fourth Claim for Relief.

5.     Plaintiff Trevor Koontz is a citizen of the State of Ohio.  He has served as a Trooper in the Ohio State Highway Patrol for the past five years.  Trooper Koontz purchased a new PBBA SP+2LE Vision vest (an SSBS Vest) through a PBE sales representative and an authorized PBE distributor.  The vest was manufactured at PBE's facility in Pompano Beach, Florida in December 2012 and shipped by PBE directly from Pompano Beach to Trooper Koontz.  PBE provided a five-year express warranty to Trooper Koontz for his SSBS Vest.  The vest is defective (including in design), has fallen apart (including in the field while Trooper Koontz was on foot patrol at the Republican National Convention in Cleveland in 2016) and poses a life-threatening safety issue.  Trooper Koontz notified and corresponded directly with PBE at its corporate headquarters in Pompano Beach, Florida, in writing and by telephone numerous times between July and November 2016 (and subsequently through counsel) about the defects in his Vision SSBS Vest and requested PBE to promptly honor its warranties and replace the vest.  PBE refused to properly address and honor its warranties and replace the defective vest with a properly functioning, safe vest.  Rather, Defendant sent Trooper Koontz a new set of shoulder straps and carrier.  A new carrier and new shoulder straps did not and cannot correct the defects with his or any other SSBS Vest.  Trooper Koontz was forced to use duct tape while on duty to prevent his SSBS Vest from falling off because of the SSBS failure.

6.     Plaintiff Steven Eric Rohner is a citizen of the State of Ohio.  He has served as a Trooper in the Ohio State Highway Patrol for sixteen years.  Trooper Rohner purchased a Point

4

Blank AXII Alpha Elite model vest (an SSBS Vest) through a PBE sales representative and an authorized PBE distributor.  The vest was manufactured at PBE's facility in Pompano Beach, Florida in May, 2015 and shipped by PBE directly from Pompano Beach to Trooper Rohner. PBE provided a five-year express warranty to Trooper Rohner for his SSBS Vest.  The vest is defective (including in design), has fallen apart (including while on duty in the field) and poses a life-threatening safety issue.  Trooper Rohner, through counsel, notified and corresponded with PBE and its counsel in writing, by telephone numerous times, and at an in-person meeting in Florida on April 26, 2017 about the breaches of warranties, defects, and failures in the field of his Elite SSBS Vest, including informing Defendant that he and other Troopers were experiencing the failures as early as within the first year, and that new replacement shoulder straps do not fix the problem.  Trooper Rohner, through counsel, additionally informed Defendant that when the failure occurs in the field he needs to remove his uniform and vest and attempt to reattach the SSBS connections in the field.  As a result, he was forced to use electrical tape while on duty to prevent the vest from falling off because of the SSBS failure.  Through counsel, he further informed Defendant that it is mandatory for him and all other Troopers to wear their bullet resistant vests.

7.     Plaintiff Ryan Purpura is a citizen of the State of Ohio.  He is a Sergeant in the Ohio Highway Patrol where he has served for the past twelve years.  Sergeant Purpura purchased a Point Blank AXII Alpha Elite model vest (an SSBS Vest) through a PBE sales representative and an authorized PBE distributor.  The vest was manufactured at PBE's facility in Pompano Beach, Florida in March, 2015 and shipped by PBE directly from Pompano Beach to Sergeant Purpura.  PBE provided a five-year express warranty to Sergeant Purpura for his SSBS Vest. The vest is defective (including in design), has failed and poses a life-threatening safety issue.

Through his counsel, he notified and corresponded with PBE representatives and its counsel in writing, by telephone numerous times, and at an in-person meeting in Florida on April 26, 2017 about the breaches of warranties and defects in his SSBS Vest and that new replacement shoulder straps do not fix the problem.  Furthermore, Defendant was provided a draft copy of this complaint on March 30, 2017.

**Defendant**

8.       PBE is a corporation organized under the laws of the State of Florida, maintaining its principal office and manufacturing facility at 2102 SW 2nd Street, Pompano Beach, Florida 33069.  Its registered agent for service is CT Corporation System**,** 1200 South Pine Island Road, Plantation, Florida 33324.

**JURISDICTION AND VENUE**

9.       This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action with in excess of 100 class members, many of whom are citizens of a state different from Defendant.

10.       This Court has personal jurisdiction over Defendant because it is a Florida corporation, maintains its principal place of business in the State of Florida, breached warranties and engaged in the acts, omissions and other conduct alleged herein in the State of Florida.

11.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant's principal place of business is located in this judicial district and the substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

**EVENTS GIVING RISE TO THE CLAIMS**

**The SSBS Vests**

12.       At all pertinent times, Defendant was and continues to manufacture, distribute,

advertise, market, and sell SSBS Vests for the intended purpose of protecting the lives of those who wear them.

13.     Bullet resistant vests typically contain two primary components: (1) the ballistic panel system; and (2) the carrier or outershell/garment in which the ballistic panel system is placed.[2]

14.     Traditionally, body armor manufacturers do not tamper with the integrity of the ballistic panels by incorporating attachments or a "suspension system" directly into the ballistic panel system.  Rather, any straps or suspension system is incorporated into the carrier, including any Velcro or other similar material.  In the typical configuration, if the Velcro, or for that matter, any other component of the outer carrier wears out, purchasers can simply order a new carrier and change out the ballistic panels from the old carrier to the new carrier in a few minutes.

15.     Five years is the typical useful life for ballistic panel systems in concealable vests and the industry-standard warranty period, while the carriers are typically warranted for 2 years. The ballistic panel systems can be removed from the carrier of most concealable vests so that the carriers can be dry cleaned or otherwise washed.  It is not uncommon for carriers to become stained, sweat-soaked or wear out and be replaced one or more times during the five-year useful life and warranty period of the ballistic panel system.

16.     Similar to other body armor manufacturers, PBE supplies a five-year written warranty covering the ballistic panel system and a separate two-year written warranty for the

---

[2] The ballistic panel system of concealable model vests is comprised of a specific configuration and/or combination of ballistic materials within a specific covering configuration (often heat sealed and water-resistant or waterproof) designed for specific threats (9mm, 40 caliber, 44 magnum, stab resistance, etc.). Additionally, part of the current National Institute of Justice 0101.06 Standard for testing body armor comprises a 30-minute wet submersion test. § 7.8.2. ("All new flexible vests and jackets shall be submersed and tested wet. Each armor panel shall be hung vertically in a water bath meeting the requirements of section 4.2.4 for 30 min…")

carriers for its SSBS Vests.

17.     PBE manufacturers various models of bullet resistant vests, including but not limited to, the Point Blank Vision, Elite, Hi-Lite, Standard, Maverick and Assault One models, as well as PACA Blue Steel, Perform X, and Standard models, all containing what PBE refers to as its "Self-Suspending Ballistic System" or SSBS.

18.     In an SSBS Vest, the ballistic panel system includes the SSBS.  The SSBS is a "ballistic system" that features several components that form and are integrated into the ballistic panel system.  Those components include shoulder straps that connect to Velcro or similar material sewn directly into the ballistic panels.[3]  The carrier then covers the ballistic panel system, but, unlike in a typical vest, the carrier does not have its own shoulder straps or other suspension system to hold it in place when being worn.  In the SSBS Vests, that "suspension system" is directly incorporated into the ballistic panel system.

19.     Figures 1, 2 and 3 below are of the ballistic panel system of an SSBS Vest, without the carrier, showing the SSBS consisting of the Velcro-like c-clamps sewn into the top of the ballistic panels and the straps that connect the front ballistic panel to the back ballistic panel (both panels and the SSBS form the overall ballistic panel system).  Figure 1 is a single ballistic panel from an SSBS Vest with the sewn-in Velcro-like c-clamps at the top into which the straps are inserted.   Figure 2 is a close up of one of the c-clamps.  Figure 3 below shows the entire ballistic panel system of an SSBS Vest.

---

[3] At this time it is not known whether the material is actual Velcro or a variation. Thus, the term Velcro is used generically.



FIGURE 1



FIGURE 2



FIGURE 3

20.     Figures 4 and 5 below show the differences between the carrier for the SSBS

Vests and the carrier of a traditional bullet resistant vest.  Figure 4 shows the carrier of an SSBS

Vest, which consists of the front and back coverings for the ballistic panel system plus the waist

straps.  The carriers are sold by PBE separately and do not come with any SSBS component such

as the shoulder straps.  Figure 5 shows an industry standard carrier where the shoulder straps are

part of and sewn into the carrier, rather than the ballistic panels.  If the shoulder straps fail for any reason with the industry standard design, the ballistic panels can be removed from the old carrier and inserted into a new replacement carrier.



FIGURE 4



FIGURE 5

11

21.     The SSBS is defectively designed, contains defects in material and workmanship, fails, and results in SSBS Vests posing a life-threatening safety risk to end users.

22.     The SSBS Vests unexpectedly fall apart in the field when movement causes the SSBS to fail such that the ballistic panels separate from the shoulder straps.  When that happens, for example with a concealable SSBS Vest, the ballistic panel sinks down inside the user's uniform.  The user then needs to stop whatever he or she is doing, find a safe place, remove their uniform and find some way to hold the vest in place other than the failed SSBS.  Law enforcement officers have turned, and continue to be forced to turn, to various methods, including duct tape, electrical tape, safety pins and other methods, to address the failure of their SSBS Vests and the resulting safety issue.  Figures 6, 7 and 8 below show a few such examples.



FIGURE 6                    FIGURE 7


FIGURE 8

23.     PBE knowingly fails to disclose the fact that its SSBS Vests suffer from a serious latent design defect, namely that the SSBS, connecting the ballistic panels and holding the vest in place, fails unexpectedly, rendering the vest useless.

24.     Instead, PBE markets its exclusive SSBS as "highly-effective," as providing optimal protective coverage, and as preventing the rolling or sagging of the ballistic panels inside the carrier.

25.     PBE acknowledges the importance of its SSBS in holding the ballistic panels in place as intended, stating in the Care and Maintenance Manual that accompanies each SSBS Vest that "[i]t has to be worn properly in order for it to function as designed.  Before and after donning your armor, make sure that the ballistic panels are in the proper position within the carrier and that the suspension straps are properly engaged.  Armor that has 'set wrinkles' due to improper storage or excess wear and does not stay in position within the outershell, should be replaced."  Here, the ballistic panels do not stay in position, not because they are wrinkled or

suffer from improper storage or excess wear, but because the SSBS Vests suffer from a defective design wherein the SSBS prematurely fails.

26.    Each SSBS Vest manufactured by PBE, regardless of the make, model, or threat level, includes the same SSBS described herein and suffers from the same latent defects.

27.    The defects in the SSBS Vests exist from the time the SSBS Vests leave the manufacturing line, in that the SSBS will fail as it is repeatedly used by officers when donning and doffing their SSBS Vests.

28.    The defects in the SSBS Vests have manifested in the vests of all Individual Plaintiffs.  Those vests have failed and fallen apart in the field.  As a result, the vests could not continue to be worn and the Individual Plaintiffs were forced to obtain new replacement vests.

29.    There is no adequate remedy for the latent design defect that exists in PBE's SSBS Vests.

30.    PBE's Care and Maintenance Manual warns, "DO NOT attempt to repair the garment yourself."  Additionally, National Institute of Justice ("NIJ") standards and guidelines warn end users to "[n]ever attempt to repair armor panels under any circumstances."

31.    Providing new or additional sets of shoulder straps is not an adequate remedy to fix the design flaws in PBE's SSBS Vests, as these straps are part of the defective SSBS design and will also fail after they are used, again leaving officers at risk of having the SSBS Vests fail while in the line of duty.  Replacing a defective product with a defective product is not an adequate remedy.

32.    The SSBS is a component of and incorporated into the ballistic panel system with the SSBS Vests.  Thus, when it wears out or otherwise fails, as is happening as soon as within one year, there is no non-destructive means for an end user to remedy that situation.  Any

14

remedy short of replacing the SSBS Vest with a non-SSBS Vest is inadequate.

33.     Furthermore, PBE's warranties and purported remedy of "repair" fail of their essential purpose and are unconscionable because: (i) the defects in the SSBS Vests are latent and not discoverable on reasonable inspection; (ii) Defendant was aware of the problems with the vests; (iii) there is no indication that Defendant can repair the latent defects; and (iv) because Defendant's repeated efforts to stop the SSBS failures, including for example in Trooper Koontz's vest, were in fact unsuccessful; thus,  they deprive class members of the substantial value of their bargain, leaving them without a remedy. This is highlighted by the fact that the Individual Plaintiffs and the vast majority of law enforcement personnel across the country have mandatory wear policies.  Sending SSBS Vests back to PBE for some unknown form of attempted repair and for an unknown duration of time is not an option or true remedy.

34.     Even were PBE to take apart the ballistic panel system to replace the worn Velcro and other components of the SSBS, doing so may also violate NIJ standards or guidelines which state in pertinent part: "**Note that the covers of the armor panels should not be opened for any reason.**"   NIJ Selection & Application Guide 0101.06 to Ballistic-Resistant Body Armor, p. 33 (emphasis in original).

35.     This is not the first time Defendant has had reported problems with the SSBS, a system Defendant knows is life-critical and that it warrants to be "highly effective" but in truth unexpectedly falls apart.  Defendant first manufactured and sold a model vest with an SSBS type system in the mid-2000s.  Defendant later expanded the SSBS into additional model vests.

36.     Early on, the SSBS models used elastic shoulder straps.  Users reported problems with those SSBS models, including that the elastic permanently stretched and resulted in failure of proper ballistic coverage, fit, and other associated problems.  As a result, Defendant switched

to more robust, higher quality and higher-cost components of the SSBS that provided better connectivity, including larger and longer "hook" Velcro clamps/tabs sewn into the ballistic panels, as well as thicker, elastic and edge-stitched shoulders straps. The straps were manufactured in-house by PBE and had the counterpart "loop" Velcro.  Figure 9 below shows an example:



FIGURE 9

37.     To lower costs and to shed weight so that it could advertise its vests as "lower profile" and among the lightest and thinnest in the marketplace, Defendant shortly thereafter jettisoned the higher quality more robust components and switched to less expensive, lower quality materials for the SSBS components, including using outsourced Breath-O-Prene straps as part of its SSBS that do not have the traditional counterpart "loop" Velcro to connect to the "hook" Velcro connection tabs sewn into the ballistic panels.  Defendants also reduced the amount of material used in the SSBS components, including reducing the size and length of the square Velcro connection clamps (shown in Figure 9 above) to the current smaller rounded c-

clamps (shown in Figures 2 and 7 above).  Reducing the size and coverage of the "hook" Velcro portion of the SSBS sewn directly into the ballistic panels exacerbates the problems by decreasing the peel and shear strength of the connections and thus, increases the likelihood and immediacy of failure of the SSBS.  In further efforts to reduce costs and shed more weight, Defendant later reduced the thickness, density, and amount of Breathe-O-Prene in the SSBS straps.  As a result of these cost-saving and marketing measures, Defendant has experienced reported failures of its SSBS Vests.

38.     Defendant's SSBS Vests at issue in this litigation contain lower-cost and lower-quality components that are failing, including smaller "hook" Velco clamps and Breathe-O-Prene straps that do not have the traditional counterpart "loop" Velcro to connect to the "hook" Velcro connection tabs sewn into the ballistic panels.

39.     Defendant has manufactured and sold more than one hundred thousand SSBS Vests during the past five years for use by police officers and others at prices in the average range of $700.

40.     Substantially all of the acts and omissions alleged herein emanated from and were controlled by Defendant from its facilities located at 2102 SW 2nd Street, Pompano Beach, Florida 33069, including the design, manufacture, marketing, and distribution of the SSBS Vests.

41.     Defendant at all times relevant to matters herein, controlled all aspects of the design, manufacture, marketing, distribution, and labeling of the subject SSBS Vests.

42.     The SSBS Vests are only sold directly by PBE or through PBE-authorized distributors and representatives.

**Warranties**

43.     PBE made express representations and warranties regarding the SSBS Vests to

17

the Individual Plaintiffs and class members that were part of the basis of the bargain.

44.     Defendant made certain express warranties regarding the qualities and performance characteristics of all SSBS Vests.

45.     After every sale, each SSBS Vest was shipped with a Care and Maintenance Manual containing the terms of an express warranty by PBE directed to each Individual Plaintiff and class member and a Warranty and Customer Response Card from PBE, which class members were asked to return to PBE in Florida.

46.     In its Care and Maintenance Manual, PBE expressly warrants any component of the ballistic panel system of SSBS Vests for a five-year period:

> "During the warranty period, *any* soft ballistic *component* having a manufacturing or material defect, as determined through inspection by an authorized Point Blank representative, will be repaired or replaced at no cost to the customer."

(emphasis added).  The SSBS is a component of the soft ballistic panel system of the SSBS Vest, as discussed above, and are not, in any way, part of the outer carrier system.

47.     The express five-year warranty in the Care and Maintenance Manual further provides:

> "Should the soft body armor ballistic panel cover be compromised (cut, torn or frayed); it should not be worn and immediately returned to the manufacturer for inspection and repair. If the damage is the result of normal wear and tear, the damage will be repaired free of charge."

48.     Another express warranty in the Care and Maintenance Manual provides:

> Point Blank Enterprises warrants the ballistic panels for a period of five (5) years against manufacturing defects.

49.     PBE's express warranties in its Care and Maintenance Manual for all SSBS Vests are the same or substantially similar, regardless of the particular make, model, or threat level of SSBS Vest purchased.

50.     Defendant provides an additional express warranty to Individual Plaintiffs and class members directly on the face of the ballistic panels into which the SSBS is directly integrated/sewn, stating, "Warranty Period: 5 Years."

51.     PBE made additional express representations and warranties regarding the SSBS Vests to the Individual Plaintiffs and class members through its website advertisements, the descriptions in State Pricing Lists and State Contracts throughout Florida and the country, and PBE's other sales and marketing materials that were part of the basis of the bargain.  In all of these materials, PBE consistently represented that the SSBS is a Self Suspending Ballistic System, not an outer carrier system, warranted by Defendant for not only the five-year period for "components" of the "ballistic system" but also warranted to "keep[] the ballistic panels completely suspended…throughout the life of the vest," which is at minimum the five-year warranty.[4]

52.     More specifically, Defendant warranted and advertised on its website and in other materials disseminated throughout Florida and the country including to the Individual Plaintiffs and all class members (and which became part of the basis of the bargain):



53.     Defendant warranted to the Individual Plaintiffs and all class members that the

---

[4] Recognizing the true effectiveness and duration of Breathe-O-Prene, Medicaid authorizes payment for new Breathe-O-Prene straps for CPAP masks every 90 days.

SSBS Vests (and its components) would be free from defects in materials and workmanship and would be merchantable and fit for the particular purpose for which they were intended.

54.     There are undisclaimed implied warranties that the SSBS Vests are merchantable and fit for the particular purpose for which they are sold.  Any purported language of disclaimer is not conspicuous, set apart, and otherwise does not comply with the legally required method for exclusion of implied warranties.

55.     The Individual Plaintiffs and class members purchased their SSBS Vests either directly from Defendant or from one of Defendant's authorized representative distributors.

56.     Defendant's authorized representative distributors were not intended to be the ultimate consumers of the SSBS Vests.  Rather, the Individual Plaintiffs and class members were the intended third-party beneficiaries of the warranties associated with the SSBS Vests.  The warranties associated with the SSBS Vests were designed for and intended to benefit the ultimate consumers.

57.     Defendant has breached express and implied warranties in that, among other things, the SSBS Vests do not pass without objection in the trade, are unsuitable for the ordinary and intended uses for which they were sold and are not merchantable.

58.     Defendant breached its express warranties by not providing a product which could provide the benefits described in the labels and advertising.  As a result of Defendant's breach of its contract and warranties, the Individual Plaintiffs and class members have been damaged in the amount of the purchase price of their SSBS Vests.

**Damages**

59.     Plaintiffs Koontz, Purpura, and Rohner purchased SSBS Vests with a defective SSBS design that have failed, pose a safety risk and cannot be safely worn.  They, and all class

members, have not received the benefit of the bargain.  The SSBS prematurely fails resulting in the ballistic panels detaching from the shoulder straps.  This has occurred while the Individual Plaintiffs were on duty in the field.  The Individual Plaintiffs purchased SSBS Vests that are still within their warranty period but have fallen apart (as soon as within one year) and do not comply with the warranties because, among other things, the vests contain defects in materials and workmanship, are not suitable for their intended life-critical purposes and are not merchantable. The vests physically cannot be worn without duct tape, safety pins, or similar measures.

60.     Named Plaintiff OSTA has incurred direct financial loss, including having paid for the replacement of defective SSBS Vests.  Named Plaintiff IUPA has similarly incurred time and expense stepping forward to address this safety issue on behalf of its constituents, including those in Florida with SSBS vests.

61.     The Individual Plaintiffs and class members purchased SSBS Vests that do not provide the represented and warranted characteristics, are unsuitable for the intended uses, are not merchantable and present a significant safety risk.

62.     The Individual Plaintiffs and class members, as reasonable consumers, would not have purchased SSBS Vests had they known of the manifest defects in the SSBS and that it would fail as described herein, rendering the vests useless.

**CLASS ACTION ALLEGATIONS**

63.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), for Counts I-III and Count V, and 23(b)(2), for Count IV, on behalf of themselves and the following class of other individuals and entities, being more particularly described as follows (the "Class"):

> All individuals and entities in the fifty United States and the District of Columbia that purchased new SSBS Vests from Defendant or one of Defendant's authorized  distributors or sales representatives, and who

continue to purchase such vests up to the date a class is certified by this Court, excluding Defendant, its affiliates, parents and subsidiaries, all directors, officers, agents, and employees of Defendant, its distributors, federal agencies and any persons who have been physically injured as a result of defects in their vests.

64.    The prerequisites to class certification under Fed.R.Civ.P. 23(a) are met in that:

(A)    The members of the Class are so numerous that joinder of all members is impractical.  There are tens of thousands of class members.  The precise number of class members and their identities can be ascertained from the records of PBE.

(B)    The claims of the Named Plaintiffs[5] raise questions of law and fact common to all class members.   Among the questions of law and fact common to the Class are the following:

(i)    Whether the SSBS Vests are defective;

(ii)    Whether the SSBS Vests fail to comply with the express and implied warranties provided by PBE;

(iii)    Whether PBE misled consumers regarding the quality and performance of its SSBS Vests;

(iv)    Whether PBE concealed the defective nature of its SSBS Vests from class members;

(v)    Whether PBE has acted honestly and in good faith and fair dealing; and

(vi)    The measure of damages.

(C)    The claims of the Individual Plaintiffs are typical of, if not identical, to the claims of each member of the Class because they and all class members purchased SSBS Vests which all suffer from the same defective SSBS, PBE's conduct in its marketing and sale of its SSBS Vests was the same, including its failure to disclose the defective nature of

---

[5] As noted in ¶¶ 3-4 *supra*, OSTA and IUPA are Named Plaintiffs in Count IV only.

the SSBS Vests, and all class member claims are grounded in the same warranties. The application of legal principals and proof will essentially be the same for all class members.

(D)     The Named Plaintiffs will fairly and adequately protect the interests of all class members. They have retained competent counsel who are experienced in complex litigation, including class action litigation involving defective body armor, and who will prosecute this action vigorously. Named Plaintiffs will fairly and adequately assert and protect the interests of the Class. They do not have any interests antagonistic to or in conflict with the Class; their interests are antagonistic to the interests of the Defendant; and they will vigorously pursue the claims of the Class. Named Plaintiffs have adequate financial resources to vigorously pursue this action, including an agreement by their counsel to prosecute this action on a contingent basis and to advance the reasonable and necessary costs and expenses of litigation.

65.     Counts I through III, and V of this action may be maintained as a class action under Fed.R.Civ.P. 23(b)(3) because the questions of law or fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The pertinent factors under Rule 23(b)(3) that demonstrate that a class action is a superior method of litigating this controversy include:

(A)     <u>The class members' interests in individually controlling the prosecution or defense of separate actions</u>: In view of the complexity of the issues and expense of litigation, it is impractical for class members to bring separate actions, and there is no reason to believe that class members desire to proceed separately. This is particularly so

given that separate claims of individual class members are insufficient in amount to support separate actions;

(B)     The nature and extent of any litigation concerning the controversy already begun by or against class members: To Plaintiffs' knowledge, no other cases are pending against PBE concerning the class members' claims and thus, certification is appropriate here on the grounds of judicial economy;

(C)     The desirability or undesirability of concentrating the litigation of the claims in this forum: The Southern District of Florida is the most desirable forum to concentrate all litigation respecting class member claims because witnesses and evidence relevant to their claims is concentrated in this forum, because Defendant's principal place of business is in this forum, and because substantially all of the acts and omissions alleged herein emanated from and were controlled by Defendant from facilities in this forum, including the design, manufacture, marketing and distribution of the SSBS Vests.  There is no better forum; and

(D)     The likely difficulties in managing a class action: This case presents no unusual management difficulties, and to the contrary, is ideally suited to class treatment. The claims involve issues based on the same warranties, the same vest problems, and the size of the Class is too large for individual litigation, but not so large as to present an obstacle to manageability as a class action.  Additionally, the amount which may be potentially recovered by individual members of the Class -- up to approximately $700, representing the average purchase price of an SSBS Vest -- will be large enough in relation to the expense and effort of administering the action to justify a class action.

66.     Count IV of this action, seeking injunctive relief, may be maintained as a class

action under Fed.R.Civ.P. 23(b)(2) because all the prerequisites of Rule 23(a) are satisfied and because PBE has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief is appropriate respecting the Class as a whole.

### CLAIMS FOR RELIEF
### Count I
### Breach of Warranty in Warranty Statements
### (Individual Plaintiffs, Individually and on Behalf of the Class v. PBE)

67.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-66 above as if fully set forth herein.

68.     Each SSBS Vest sold by PBE included express warranties that the vest was free of defects in materials and workmanship and conformed to certain performance standards as set forth above.

69.     Defendant has breached its express warranties regarding the characteristics of the SSBS Vests as contained in the warranty provided by Defendant.  The degradation and sudden failure (as soon as within one year) of the SSBS breaches the warranty against defects in materials and workmanship.  Additionally, the SSBS is not "highly-effective" and does not in fact last "throughout the life of the vest."  Nor does it "keep[] the ballistics completely suspended... throughout the life of the vest."  In fact, when the SSBS fails, the SSBS Vest is no longer able to perform as a vest, as the SSBS is what holds the vest together and allows it to be worn as a vest.

70.     Defendant has breached its express warranties regarding its obligations to repair or replace the defective SSBS Vests at no cost to all purchasers.  And, as set forth above, Defendant's express warranties fail of their essential purpose and are unconscionable.

71.     As a result of these breaches of warranty, class members have been damaged in the amount of the purchase prices of their vests and have not received the benefit of the bargain.

72.    The Individual Plaintiffs have complied with all applicable notice requirements.

WHEREFORE, in accordance with the allegations of the First Claim for Relief, the Individual Plaintiffs demand the following for themselves and the Class against Defendant PBE:

(a)  That the Court certify the Class as described above and appoint Individual Plaintiffs as class representatives and undersigned counsel as class counsel;

(b) That judgment be entered in favor of Plaintiffs and the Class against Defendant for all compensatory losses and damages allowed by law;

(c)  An award of pre-judgment and post-judgment interest at the maximum legal rate to the Individual Plaintiffs and class members on their damages;

(d)  Awarding Plaintiffs their costs incurred in pursuing this action; and

(e)  Such other and further relief as is just and appropriate.

**Count II**
**Breach of Implied Warranty of Merchantability**
**(Individual Plaintiffs, Individually and on Behalf of the Class v. PBE)**

73.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-66 above as if fully herein.

74.    Each SSBS Vest sold by PBE, by operation of law, came with an implied warranty that it was merchantable.

75.    The Individual Plaintiffs and all class members were and are foreseeable users of the SSBS Vests and have used such vests in their intended manner and for their intended purpose.

76.    The SSBS Vests were defective when transferred from PBE, the warrantor. Among other things, the degradation and sudden failure (as soon as less than one year) of the SSBS breaches the implied warranty of merchantability.  In fact, when the SSBS fails, the SSBS

Vest is no longer able to perform as a vest, as the SSBS is what holds the vest together and allows it to be worn as a vest.

77.     As a direct and proximate result of these breaches of the implied warranty of merchantability, the Individual Plaintiffs and class members have been damaged in the amount of the purchase price of their vests.

78.     The Individual Plaintiffs have complied with all applicable notice requirements.

WHEREFORE, in accordance with the allegations of the Second Claim for Relief, the Individual Plaintiffs demand for themselves and the Class against Defendant PBE:

(a)     That the Court certify the Class as described above and appoint Individual Plaintiffs as class representatives and undersigned counsel as class counsel;

(b)     That judgment be entered in favor of Plaintiffs and the Class against Defendant for all compensatory losses and damages allowed by law;

(c)     An award of pre-judgment and post-judgment interest at the maximum legal rate to the Individual Plaintiffs and class members on their damages;

(d)  Awarding Plaintiffs their costs incurred in pursuing this action; and

(e)  Such other and further relief as is just and appropriate.

**Count III**
**Breach of Implied Warranty of Fitness for a Particular Purpose**
**(Individual Plaintiffs, Individually and on Behalf of the Class v. PBE)**

79.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 66 above as if fully set forth herein.

80.     Each SSBS Vest sold by PBE, by operation of law, came with an implied warranty that it was fit for the particular purpose for which it is used.

81.     The Individual Plaintiffs and all class members were and are foreseeable

users of the SSBS Vests and have used such vests in their intended manner and for their intended purpose.

82.     The SSBS Vests were defective when transferred from PBE, the warrantor. Among other things, the degradation and failure of the SSBS breaches the implied warranty of fitness for a particular purpose.

83.     Defendant had reason to know the particular purpose for which the vests were purchased by the Individual Plaintiffs and the Class.  The Individual Plaintiffs and the Class expected PBE would use its skill and judgment to provide adequate vests that are not defective, do not fall apart and do not suddenly fail in the line of duty in as soon as less than one year.

84.     As a direct and proximate result of the breaches of the implied warranty of fitness for a particular purpose, the Individual Plaintiffs and class members have been damaged in the amount of the purchase price of their vests.

85.     The Individual Plaintiffs have complied with all applicable notice requirements.

WHEREFORE, in accordance with the allegations of the Third Claim for Relief, the Individual Plaintiffs demand the following for themselves and the Class against Defendant PBE:

(a)     That the Court certify the Class as described above and appoint Individual Plaintiffs as class representatives and undersigned counsel as class counsel;

(b)     That judgment be entered in favor of Plaintiffs and the Class against Defendant for all compensatory losses and damages allowed by law;

(c)     An award of pre-judgment and post-judgment interest at the maximum legal rate to the Individual Plaintiffs and class members on their damages;

(d)  Awarding Plaintiffs their costs incurred in pursuing this action; and

(e)  Such other and further relief as is just and appropriate.

**Count IV**
**Injunctive Relief**
**(Plaintiffs, Individually and on Behalf of the Class v. PBE)**

86.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-66 above as if fully set forth herein

87.     Tens of thousands of SSBS Vests that are within their five-year warranty period have been purchased by class members including law enforcement personnel.

88.     Defendant continues to sell SSBS Vests.

89.     Tens of thousands of class members, including law enforcement personnel and others who use the SSBS Vests and continue to purchase the SSBS Vests are unaware of the defects in the vests.

90.     Plaintiffs and class members show that they are entitled to affirmative injunctive relief requiring Defendant to cease selling the defective SSBS Vests and to notify all class members of the defects in the vests and the life-threatening danger associated with continued use, including the sudden and unexpected failure of the SSBS while in the field causing the ballistic panels to detach from the shoulder straps, rendering it useless as a vest.

91.     Plaintiffs further show that PBE, either directly or through its agents, distributors, partners, retailers and distribution channels has been selling SSBS Vests represented to be brand new but in fact contain ballistic panels that have dates of manufacture and dates of issue as old as four years prior.  More specifically and by way of example, as part of Plaintiffs' investigation into the facts and circumstances hereof, a new PBBA Vision vest was purchased in April, 2017 from Galls, LLC., a PBE authorized distributor.  That vest, shipped a few days later, contained a new outer carrier but hidden inside and undisclosed were ballistic panels that were four and a half years old having a "date of manufacture" and "date of issue" in September, 2012, serial

numbers 120001166976 and 120001166988.  The warranty for the SSBS Vests states that it runs from the date of issue.  Thus, rather than receiving a vest with a five-year warranty, the vest purchased in April 2017 had just a few months of warranty left.

92.      Named Plaintiffs have a substantial likelihood of success on the merits.  Indeed, prior problems and unfair and deceptive conduct with various PBE brand vests spawned multiple class actions, a nation-wide safety notice, cessation of sale and the recall and replacements of tens of thousands of vests.  *See* footnote 1, *supra* (list of prior actions against Defendant's subsidiaries).  Here, the potential life-threatening injury to class members outweighs whatever damage the requested injunction may cause PBE.  Furthermore, the requested injunction, if issued, will be in the best interest of the nation's law enforcement community and the public interest as opposed to being adverse to the public interest.

93.      If the injunctive relief is not provided, then irreparable injury to some users, *i.e.,* death or serious bodily injury, may result.

94.      This injunctive relief is appropriate in accordance with Rule 23(b)(2), Fed.R.Civ.P.

WHEREFORE, in accordance with the allegations of the Fourth Claim for Relief, Named Plaintiffs demand the following for themselves and the class against Defendant:

(a)      That the Court certify the Class as described;

(b)      That this Court enter injunctive relief in favor of Plaintiffs and the Class against Defendant requiring Defendant to cease selling SSBS Vests and to notify all class members of the defects and life-threatening safety problems with the vests;

(c)  Awarding Plaintiffs their costs incurred in pursuing this action; and

(d)  Such other and further relief as is just and appropriate.

**Count V**
**Deceptive and Unfair Trade Practices**
**(Individual Plaintiffs, Individually and on Behalf of the Class v. PBE)**

95.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-66 and 91 above as if fully set forth herein.

96.     The Individual Plaintiffs and class members are "consumers" as defined by Fla. Stat. § 501.203(7), and, subsequent to the 2001 amendment and applicable case law, "persons" pursuant to Fla. Stat § 501.211(2).

97.     At all relevant times hereto, PBE's actions in designing, manufacturing, advertising, marketing, soliciting, offering, promoting and selling the SSBS Vests constituted "trade or commerce" under Fla. Stat. § 501.203(8).

98.     Within the four year period prior to the filing of this Complaint and continuing to the present, PBE, in the course of trade and commerce, engaged in unconscionable, unfair, and/or deceptive acts or practices harming the Individual Plaintiffs and class members as described herein.

99.     The Individual Plaintiffs and class members purchased PBE's SSBS Vests as part of a consumer transaction.

100.     PBE engaged in deceptive, misleading and unfair conduct in the marketing and sale of its SSBS Vests (a defective product which presents a public hazard and which places the lives of law enforcement officers at unjustifiably heightened risk) by, among other things: (i) representing that its SSBS Vests have characteristics and benefits they do not have; (ii) representing that its SSBS Vests are of a particular standard or quality when they are not; and (iii) failing to disclose material facts regarding the premature failure of the SSBS rendering the SSBS Vests worthless to officers.

31

101.    PBE further engaged in deceptive, misleading and unfair conduct including but not limited to: (i) the failure to notify the Individual Plaintiffs and the Class of the defects in the SSBS Vests and that the vests are prone to falling apart at any moment in the field; (ii) selling SSBS Vests (or permitting them to be sold either directly or through its distribution channels), that are represented to be new but in fact have ballistic panels with manufacture and issue dates up to four and a half years old; and (iii) the failure to honor its warranties and recall and replace the defective SSBS Vests.  These actions constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.204.

102.    PBE's deceptive, misleading and unfair conduct is likely to mislead consumers acting reasonably under the circumstances, to the consumer's detriment.

103.    In fact, PBE's deceptive, misleading and unfair conduct did mislead the Individual Plaintiffs, who acted reasonably under the circumstances, to their detriment, as they purchased a bullet resistant vest that cannot be properly worn and is thus worthless.  Had PBE disclosed the true nature of its SSBS Vests, the Individual Plaintiffs and class members would not have purchased them.

104.    All or substantially all of the relevant events, acts and omissions at issue, including the design, material selection and purchases, manufacture, marketing and distribution of the defective SSBS Vests, occurred and/or emanated from Defendant's principal place of business (and its design and manufacturing facilities) in Pompano Beach, Florida.

105.    As a direct and proximate result of PBE's practices in violation of Fla. Stat. §501.204, the Individual Plaintiffs and members of the Class have incurred actual damages in the amount of the purchase price of their vests.

106.    Pursuant to Fla. Stat. §§ 501.211 and 501.2105, the Individual Plaintiffs and the

Class are entitled to recover from PBE reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, in accordance with the allegations of the Fifth Claim for Relief, the Individual Plaintiffs demand the following for themselves and the Class against Defendant:

(a)     That the Court certify the Class as described above and appoint Individual Plaintiffs as class representatives and undersigned counsel as class counsel;

(b)     That judgment be entered in favor of Plaintiffs and the Class against Defendant for all damages allowed by law;

(c)     An award of pre-judgment and post-judgment interest at the maximum legal rate to Plaintiffs and class members on their damages;

(d)     That the Court award attorneys' fees, costs and expenses of litigation; and

(e)     Such other and further relief as is just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38, Fed.R.Civ.P., Plaintiffs hereby demand a Jury Trial in this matter on all issues so triable.

Respectfully submitted this 19th day of October, 2017.

**MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A.**
800 Corporate Drive, Suite 500
Ft. Lauderdale, Florida 33334
Telephone: (954) 491-2000
Facsimile: (954) 491-2051

By:     s/ Michael W. Moskowitz
        MICHAEL W. MOSKOWITZ
        Florida Bar No. 254606
        Email: mmoskowitz@mmsslaw.com
        ARI J. GLAZER
        Florida Bar No. 194212
        Email: aglazer@mmsslaw.com

**KANNER & WHITELEY, LLC**
Allan Kanner, Esq.
a.kanner@kanner-law.com
La. Bar No. 20580
Cynthia St. Amant, Esq.
c.stamant@kanner-law.com
La. Bar No. 24439
701 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763
*Pro Hac Vice to be filed*

**COMPLEX LAW GROUP, LLC**
David M. Cohen, Esq.
Ga. Bar No. 173503
dcohen@complexlaw.com
40 Powder Springs Street
Marietta, Georgia 30064
Telephone: (770) 200-3100
Facsimile: (770) 200-3101
*Pro Hac Vice* to be filed

Herschel M. Sigall, Esq.
Ohio Bar No. 0041728
190 West Johnstown Road
Gahanna, Ohio 43230
Tel: (614) 781-7686
Fax: (614) 781-7685
*Pro Hac Vice* to be filed

**Attorneys for Plaintiffs**