**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 0:17-cv-62051-UU

OHIO STATE TROOPERS
ASSOCIATION, INC., *et al*.,

      Plaintiffs,

v.

POINT BLANK ENTERPRISES, INC.,

      Defendant.

_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon Plaintiffs' Motion for Class Certification (the "Motion to Certify"). D.E. 89. The Court has considered the Motion to Certify, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons set forth below, Plaintiffs' Motion is DENIED.

**I.**     **Factual Background**

    A.  The Parties

Defendant Point Blank Enterprises, Inc. ("Defendant") is "one of the world's largest manufacturers of law enforcement and military protective products, including ballistic resistant soft body armor." D.E. 1 ¶ 1. Defendant sells ballistic vests to police officers and others throughout the United States and the world through various channels including, directly to consumers, through sales representatives, and through authorized distributors. *Id*. This action concerns alleged defects in Defendant's "Self-Suspending Ballistic System" ("SSBS") ballistic vests.

1

Plaintiff the Ohio State Troopers Association, Inc., (the "OSTA") is a membership organization whose members include the Ohio State Highway Patrol Troopers and others. D.E. 52 ¶ 3. Plaintiff the International Union of Police Association (the "IUPA"), is the only AFL-CIO union chartered exclusively for law enforcement and is organized and licensed in the State of Florida and maintains its headquarters in Sarasota Florida. The IUPA and the OSTA shall be collectively referred to as the "associational Plaintiffs."

Plaintiff Trevor Koontz ("Koontz") is a citizen of the State of Ohio and a Trooper in the Ohio State Highway Patrol. *Id.* ¶ 5. Koontz purchased one of Defendant's vests manufactured in Florida in December, 2012 through Defendant's sales representative. *Id*. Plaintiffs allege that Koontz's ballistic vest has manufacturing and design defects and has "fallen apart" in the field as recently as 2016. *Id.* Plaintiff Steven Eric Rohner ("Rohner") is a citizen of Ohio and a Trooper in the Ohio State Highway Patrol. D.E. 52 ¶ 6. Rohner purchased one of Defendant's ballistic vests manufactured in Florida in May, 2015 through Defendant's sales representative. *Id*. Rohner's vest also allegedly has manufacturing and design defects and has fallen apart while on duty in the field. *Id.* Plaintiff Ryan Purpura ("Purpura) is also a citizen of Ohio and a Sergeant in the Ohio State Highway Patrol. D.E. 52 ¶ 7. Similar to Koontz and Rohner, he purchased one of Defendant's ballistic vests manufactured in Florida through Defendant's sales representative in March, 2015. *Id*. Purpura's vest also allegedly has defects and has fallen apart. Koontz, Rohner and Purpura are all members of the OSTA, and shall be collectively referred to as the "individual Plaintiffs."

### B.  The SSBS Vests & the Alleged Defects

Plaintiffs allege that ballistic vests generally contain two components, a ballistic panel that stops projectiles and a carrier that holds the ballistics panel in place on the wearer. D.E. 52 ¶

14. Traditionally, the carrier contains shoulder straps or another suspension system to hold the ballistic panel in place. D.E. 52 ¶ 19. Unlike traditional models however, Defendant's vests contain an SSBS, in which Velcro® "c-clamps" are sewn directly onto the ballistic panel itself, as opposed to the carrier. *See* D.E. 52 at 10-11. These c-clamps join the two halves of the vest together by closing onto attached Breathe-O-Prene® shoulder straps and the carrier is then placed over the SSBS. *See* D.E. 52 at 10-11.

Plaintiffs contend that Defendant's SSBS vests are defectively designed and contain defects in material and workmanship. D.E. 52 ¶ 22. Specifically, Plaintiffs claim that the ballistic panels unexpectedly separate from the shoulder straps, causing Defendant's SSBS vests to sink into the user's uniform. *Id.* ¶ 23. Plaintiffs allege that this is the result of Defendant's attempt to save costs and make their vests lower profile. *Id.* Plaintiffs allege Defendant switched from using sturdier Velcro® shoulder straps to using Breathe-O-Prene®, a material that lacks the counterpart loops onto which the c-clamps can attach. *Id.* ¶ 39. Defendant also reduced the amount of material used in the SSBS components, including "reducing the size and length of the Velcro [c-clamps]." *Id.* Plaintiffs allege that these changes reduced the shear strength of the connections between the c-clamps and the shoulder straps, increasing the likelihood of SSBS failure.

C.  The Warranties

Plaintiffs also allege that Defendant made both express and implied warranties regarding the qualities and performance characteristics of its SSBS vests to the individual Plaintiffs and the putative class members. D.E. 52 ¶ 45. Specifically, Plaintiffs allege that there are three sources of express warranties: the care and maintenance manuals that are shipped with every SSBS vest,

warranties sewn onto the ballistic panel of each SSBS vest, and Defendant's advertisements. D.E. 52 at 19-21.

Plaintiffs allege that each SSBS vest is shipped with a care and maintenance manual, which contains express warranties and a "warranty and customer response card," which class members were asked to return to Defendant in Florida. *Id.* ¶ 47. The express warranties contained in these manuals include a five-year warranty for any component of the ballistic panel of the SSBS vests. Plaintiffs also allege that Defendant's express warranties "in its Care and Maintenance Manual for all SSBS Vests are the same or substantially similar, regardless of the particular make, model, or threat level of SSBS Vest purchased." D.E. 52 ¶ 51. In addition to the warranties contained in the care and maintenance manual, Plaintiffs allege that Defendant "provides an additional and separate express warranty to Individual Plaintiffs and class members on the labels on the face of the ballistic panels into which the SSBS is directly integrated/sewn." *Id.* ¶ 52. Plaintiffs interpret this warranty as an unconditional five-year warranty with no limitations, conditions precedent or exclusions. *Id.* Lastly, Plaintiffs allege that Defendant made express representations and warranties through website advertisements, "the descriptions in State Pricing Lists and State Contracts throughout Florida and the country, and PBE's other sales and marketing materials that were part of the basis of the bargain." *Id.* ¶ 53. In all of these materials, Defendant allegedly represented that the SSBS vests are warranted to "keep[] the ballistic panels completely suspended…throughout the life of the vest." D.E. 52 ¶ 53.

Plaintiffs also allege that there are undisclaimed implied warranties that the SSBS vests are merchantable and fit for the particular purpose for which they are sold. *Id.* ¶ 56. Plaintiffs argue that Defendants breached the express and implied warranties because "the SSBS Vests do not pass without objection in the trade, are unsuitable for the ordinary and intended uses for which

4

they were sold and are not merchantable," and Defendant did not provide "a product which could provide the benefits described in the labels and advertising." D.E. 52 ¶¶ 58-59.

       D.  <u>Damages</u>

Plaintiffs allege that the individual Plaintiffs purchased SSBS vests that are defective in that the ballistic panels prematurely detach from the shoulder straps and therefore the individual Plaintiffs, and all class members have "not received the benefit of the bargain," D.E. 52 ¶ 60, and are subject to an increased safety risk. *Id.* ¶ 62. Thus, Plaintiffs allege that "[a]s a result of Defendant's breach of its contract and warranties, the individual Plaintiffs and class members have been damaged in the amount of the purchase price of their SSBS Vests." *Id.* ¶ 59. As to the OSTA, Plaintiffs allege that it as an entity suffered "financial loss in time and money, including purchasing and providing replacement vests for the defective SSBS Vests . . . ." D.E. 52 ¶ 3. Plaintiffs also allege that the OSTA's "members have purchased and/or wear the defective SSBS vests." *Id.* As to the IUPA, Plaintiffs allege that it has "directly incurred financial loss in time and money in connection with the unacceptable safety risks the defective SSBS Vests have subjected its members to, including many of its members in Florida that have purchased or wear the defective SSBS Vests." *Id.* 52 at 23.

## II.    **Procedural Background**

On April 16, 2018, Plaintiffs filed their amended class action complaint, alleging four counts, individually and on behalf of a class defined as:

> All individuals and entities in the fifty United States and the District of Columbia that purchased new SSBS Vests from Defendant or one of Defendant's authorized distributors or sales representatives, and who continue to purchase such vests up to the date a class is certified by this Court, excluding Defendant, its affiliates, parents and subsidiaries, all directors, officers, agents, and employees of Defendant, its distributors, federal agencies and any persons who have been physically injured as a result of defects in their vests. D.E. 52 ¶ 64.

Counts One through Three are brought solely by the individual Plaintiffs, individually and on behalf of the class, and assert claims for: (1) breach of express warranty; (2) breach of implied warranty of merchantability; and (3) breach of implied warranty of fitness for a particular purpose. D.E. 52. Count Four is not precisely pled. While technically pled as one count, it involves two claims for relief: a claim for damages brought by the individual Plaintiffs and the class, pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat § 501, *et seq*., and a claim for injunctive relief under the FDUTPA brought by the associational Plaintiffs and the class. D.E. 52.[1]

Although Plaintiffs only sought to certify one class of purchasers in their amended complaint, in the instant Motion, Plaintiffs move to certify the following classes under Fed. R. Civ. P. 23(a) and 23(b)(2),(3):

> For purposes of Plaintiffs' FDUTPA claims, Plaintiffs define the Class as:
>
> All individuals and entities in the fifty United States and the District of Columbia that purchased and/or used new SSBS Vests from Defendant or one of Defendant's authorized distributors or sales representatives, and who continue to purchase and/or use such vests up to the date a Class is certified by this Court.
> D.E. 89 at 8.

Plaintiffs seek certification of two separate FDUTPA classes: one class for their injunctive relief claim under Rule 23(b)(2), requesting that the Court enjoin sale of all of Defendant's SSBS vests, and one class for their monetary damages claim pursuant to Rule 23(b)(3). D.E. 89 at 18. Alternatively, if the Court declines to certify separate Rule 23(b)(2) and

---

[1] The language of the Count itself states that it is being brought by "Plaintiffs, Individually and on Behalf of the Class." D.E. 52 at 31. But, the amended complaint also states that both the IUPA and the OSTA are Plaintiffs "for purposes of injunctive relief sought in the Fourth Claim for Relief." D.E. 52 ¶¶ 3-4. Moreover, the class definition in the amended complaint references "the injunctive relief sought by Plaintiffs OSTA and IUPA in Count IV . . . ." D.E. 52 ¶ 64. Accordingly, although plead as one count, the Court construes Count Four as bringing two separate claims: one claim brought by the individual Plaintiffs, individually and on behalf of the class, for monetary relief under the FDUTPA, and one claim brought by the associational plaintiffs, individually and on behalf of the class, for injunctive relief under the FDUTPA.

Rule 23(b)(3) classes, Plaintiffs request that the Court certify the class as a Rule 23(b)(3) class. *Id*. n. 23; *see Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 316 (S.D. Fla. 2001) (explaining that in claims for injunctive relief and monetary damages, the Court may certify a separate class for injunctive relief claims and monetary damages claims).[2]

> For purposes of the Individual Plaintiffs' warranty claims, Plaintiffs define the class as:

>> All individuals and entities in California, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, Ohio, Pennsylvania, Texas, Virginia, and Washington that purchased and/or used new SSBS Vests from Defendant or one of Defendant's authorized distributors or sales representatives, and who continue to purchase and/or use such vests up to the date a Class is certified by this Court.
>> D.E. 89 at 8.

Although Count Three asserts a claim on behalf of the class, Plaintiffs do not seek certification of their implied warranty of fitness for a particular purpose claim in Count Three of the amended complaint. *Id*. Accordingly, the Court construes Count Three as a single claim for breach of implied warranty of fitness for a particular purpose by the individual Plaintiffs.

### III.   <u>Legal Standard</u>

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). A plaintiff seeking class certification carries the burden of proof and must "affirmatively demonstrate" that all of the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

As an initial matter, Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g.*, *Rink v. Cheminova,*

---

[2] For purposes of the Court's standing analysis, the Court uses the classes as defined in the Motion to Certify, however as discussed *infra*, these classes are not ascertainable and are an impermissible expansion of the amended complaint's class definition. *See infra* n. 12.

*Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[3] Rule 23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003).

In addition to the requirements of Rule 23(a), a plaintiff must also demonstrate that at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000).

Here, Plaintiff argues for certification under Rule 23(b)(3) on grounds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). D.E. 89. In other words, "there must be common questions of law or fact among the class relating to . . . substantive claims . . . [that] predominate such that they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Vega*, 564 F.3d at 1270 (internal citations and quotations omitted). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Plaintiffs also seek certification of a 23(b)(2) class for their FDUTPA injunctive relief claim, which requires that the Court "determine (1) whether Defendant has acted on grounds generally applicable to the class as a whole, and if so, (2) whether declaratory or final injunctive relief is the appropriate and primary remedy . . . ." *Jones v. American General Life and Acc. Ins. Co.*, 213 F.R.D. 689, 698 (S.D.Ga.2002) (citing *In re Managed Care Litig.*, 209 F.R.D. 678 (S.D.Fla.2002) and 7A Wright, Miller, & Kane, FEDERAL PRACTICE & PROCEDURE § 1775 (2d ed.1986)).

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co.*, 350 F.3d at 1188 n. 15; *see also Hudson v. Delta Airlines,* 90 F.3d 451, 457 (11th Cir. 1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

**IV.    Discussion**

A. Standing

1. Standard

"[I]it is well-settled that prior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "Only after the court determines the issues for which the named plaintiffs have standing should it

address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Id.* at 1280. As a threshold matter, Defendant argues that the Court should deny Plaintiffs' Motion to Certify because Plaintiffs lack standing to bring the instant action. D.E. 125-1 at 12. For the reasons discussed below, the Court agrees.

As set forth by the Supreme Court in *Spokeo, Inc. v. Robins*, Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ⸺ U.S. ⸺, 136 S.Ct. 1540, (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotations omitted). For the injury to be "concrete," it must be "real," and not "abstract;" however it need not be "tangible." *Id.* at 1548-49. In addition, when a party seeks injunctive relief, it must show "that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

### 2. Parties' Arguments

In its response to Plaintiffs' Motion to Certify, Defendant argues that Plaintiffs lack standing because they seek to certify classes comprised of purchasers and users of *all* SSBS vests, "but there is not one monolithic SSBS vest." D.E. 125-1 at 12. Defendant argues that it sells concealable and non-concealable SSBS vests, "and within each of these designations there are "hundreds of different models—with different ballistic packages, carriers, weight, and designs that have changed over time." *Id.* Thus, Defendant argues that as the OSTA and the

10

IUPA, as entities, have never purchased or used any of Defendants' vests and as the individual

Plaintiffs have only purchased and used two models of Defendant's non-concealable SSBS vests,

the named Plaintiffs lack standing to bring claims on behalf of purchasers and users of *all* of

Defendant's SSBS vests. *Id.* at 13; *see Dapeer v. Neutrogena Corp.,* 95 F. Supp. 3d 1366, 1373

(S.D. Fla. 2015) (Finding plaintiff lacked "Article III standing to bring claims on behalf of the

Neutrogena products he did not purchase because he cannot conceivably allege any injuries from

products that he never purchased or used.").

Plaintiffs only briefly address this contention in their reply, arguing that Defendant's

assertion that it has thousands of different models of SSBS ballistic vests is immaterial:

> [B]ecause the SSBS system incorporated into the concealable SSBS vests at issue was the
> same, and the defect in the SSBS was the same, regardless of the particular model into
> which it was incorporated . . . there are no material differences among the SSBS Vests at
> issue in this litigation.
> D.E. 136 at 14.

Here, all of the classes Plaintiffs seek to certify are defined as including: "All individuals

and entities . . . that purchased and/or used new SSBS Vests from Defendant . . . and who

continue to purchase and/or use such vests." D.E. 89 at 1 (emphasis added). Plaintiffs' amended

complaint alleges that "Trooper Koontz purchased a new PBBA SP+2LE Vision vest (an SSBS

Vest)," "Trooper Rohner purchased a Point Blank AXII Alpha Elite model vest (an SSBS Vest),"

and "Sergeant Purpura purchased a Point Blank AXII Alpha Elite model vest (an SSBS Vest)."

D.E. 52 ¶¶ 5-7. As to the OSTA, Plaintiffs allege that the OSTA has purchased and paid for

replacement vests, and many of its "members have purchased or wear the defective SSBS

Vests," *id.* ¶ 3. Plaintiffs also allege that "many of [IUPA's] members in Florida . . . have

purchased or wear the defective SSBS Vests." *Id.* ¶ 4. Thus, the Court must determine whether

the named Plaintiffs have standing to maintain a class action for an entire category of products when they only purchased a small subset of those products.

### 3. Circuit Precedent

Many courts in this district have examined this exact issue in great depth and concluded that the plaintiffs did not have standing to bring claims for products that they did not purchase. In *Toback v. GNC Holdings, Inc*., No. 13-80526-CIV, 2013 WL 5206103, (S.D. Fla. Sept. 13, 2013), the plaintiff filed a FDUTPA class action complaint seeking damages and injunctive relief and alleged that the defendant's "TriFlex" line of products did not actually promote joint health and function as advertised. *Toback*, No. 13-80526-CIV, 2013 WL 5206103 at *1. However, the plaintiff had only purchased one "TriFlex" product, "TriFlex Vitapak." *Id.* In holding that the plaintiff only had standing to bring claims related to "TriFlex Vitapak," the court explained that in the Eleventh Circuit "at least one named plaintiff must establish Article III standing for each class subclaim." *Id.* at *4 (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).[4] Accordingly, the *Toback* court reasoned that:

> The Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact. Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak . . . [and] therefore cannot establish his Article III standing with respect to any product other than the Vitapak.
> *Id.* (citing *Lujan*, 504 U.S. at 560–61).

---

[4] The Court notes that *Toback* identified two circuit splits as to standing in consumer protection class actions. No. 13-80526-CIV, 2013 WL 5206103 at *4. Some courts have found the standing issue to be properly before the court only at the class certification stage, while others have dealt with it at the motion to dismiss stage. *Compare Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984, 991–92 (E.D.Cal.2012), *with In re Frito–Lay N. Am., Inc*., No. 12–2413, 2013 U.S. Dist. LEXIS 123824, at *34–42, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013). Moreover, some courts have held that a class representative has standing to maintain a class action for an entire product line despite only having purchased a subset of those products where at least one named plaintiff had standing to assert a claim against each defendant. *Id.* (citing *In re Frito–Lay N. Am., Inc*., No. 12–2413, 2013 WL 4647512); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C–11–2910 EMC, C–11–3164 EMC, 2012 WL 2990766, at *11 (N.D.Cal. July 20, 2012) (explaining that "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"). However, as discussed *infra*, the law in the Eleventh Circuit requires that "at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1279.

One year later, the court in *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1390 (S.D. Fla. 2014) took up the same issue and, relying partially on *Toback*, reached the same result. In *Garcia*, the plaintiffs brought a class action against a food manufacturer alleging breach of express and implied warranties because its products allegedly contained certain chemicals despite being marketed and labelled as "all natural." *Id.* The plaintiffs sought to certify a class of all purchasers of defendants' products that contained these chemicals. *Id.* However, like the plaintiff in *Toback*, the plaintiffs in *Garcia* had only purchased a small number of these products. *Id.* Relying partially on *Toback*, the *Garcia* court held that the plaintiffs' only had standing as to those products they had actually purchased:

> [A] named plaintiff in a consumer class action <u>lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, even if he purchased a substantially similar product</u> . . . The Court agrees with *Toback* that, in the Eleventh Circuit, a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase[.]'"
> *Id.* at 1393-94 (quoting *Toback*, 2013 WL 5206103 at *5).

The *Garcia* court further noted that this holding was in line with both Eleventh Circuit and Supreme Court precedent:

> [J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent.
> *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir.2001).

> This individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.
> *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir.1987) (alteration in original) (quotation omitted).

> It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. <u>Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.</u>

*Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (emphasis added).

Multiple other courts in this Circuit have since followed suit. *See, e.g., Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) ("The Court reaffirms the position it took in *Garcia*: "a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase[.]'") (quoting *Garcia*, 43 F. Supp. 3d 1359); *Holliday v. Albion Labs., Inc.*, No. 9:14-CV-81294, 2015 WL 10857479, at *5 (S.D. Fla. June 9, 2015) (finding plaintiff lacked Article III standing to bring FDUTPA claim as to products he did not purchase and limiting standing to two purchased products).

### 4. Plaintiffs' Standing

#### i.  Breach of Warranty Claims

These cases are on all fours here. Plaintiffs' amended complaint contains four counts. D.E. 52. Counts One and Two are brought by the individual Plaintiffs, individually and on behalf of the class, and allege breach of express and implied warranties.[5] *Id.* As discussed, Plaintiffs seek to certify one class for these claims, defined as:

> All individuals and entities in California, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, Ohio, Pennsylvania, Texas, Virginia, and Washington that purchased and/or used new SSBS Vests from Defendant or one of Defendant's authorized distributors or sales representatives, and who continue to purchase and/or use such vests up to the date a Class is certified by this Court
> D.E. 89 at 1.

The individual Plaintiffs have only purchased and used two different models of Defendant's vests: a "Point Blank AXII Alpha Elite model vest," and a "PBBA SP+2LE Vision vest." D.E. 52. Accordingly, the individual Plaintiffs only have standing to bring claims arising out of their purchase of the "Point Blank AXII Alpha Elite model vest," and the "PBBA SP+2LE

---

[5] Plaintiffs do not seek certification of Count Three. D.E. 89 at 8.

Vision vest." They do not have standing to bring claims on behalf of "All individuals and entities in California, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, Ohio, Pennsylvania, Texas, Virginia, and Washington that purchased and/or used new SSBS Vests from Defendant," because they did not purchase or use all of Defendant's new SSBS vests. *Toback*, No. 13-80526-CIV, 2013 WL 5206103; *Garcia*, 43 F. Supp. 3d 1359; *Dapeer,* 95 F. Supp. 3d 1366; *Barron*, No. 13-62496-CIV, 2015 WL 11182066; *Holliday*, No. 9:14-CV-81294, 2015 WL 10857479. As noted above, Plaintiffs arguments that Defendant's vests all contain identical SSBS systems with the same defect is not persuasive as similarity between products does not confer standing in the Eleventh Circuit. *See Garcia,* 43 F. Supp. 3d at 1393 ([A] named plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, underlined even if he purchased a substantially similar product . . . .) (emphasis added); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (finding plaintiffs did not have standing to bring claims against defendant vehicle manufacturer for vehicles plaintiffs did not actually own even though plaintiffs alleged that the "same defective ACU was installed [in the vehicles] . . . this 'sufficient similarity' argument has not been adopted in the Eleventh Circuit.") (quotation omitted) (emphasis added); *cf. Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 533 (S.D. Fla. 2015) (finding plaintiffs had standing where class included specific models of Ford Explorer.).

Thus, the individual plaintiffs, as the named plaintiffs in Counts One through Three, have not "establish[ed] Article III standing for each class subclaim." *Prado–Steiman*, 221 F.3d at 1279. As a result, the breach of warranty class cannot be certified, and to the extent Counts One through Three assert claims on behalf of a class they are dismissed without prejudice for lack of

standing. However, the individual Plaintiffs have standing to bring these claims *individually* based on the purchase of the two models of Defendant's vests.[6]

ii.   FDUTPA Claims

As discussed, although plead as one count, the Court construes Count Four as bringing two separate FDUTPA claims: one claim brought by the individual Plaintiffs, individually and on behalf of the class for monetary damages under the FDUTPA, and one claim brought by the associational Plaintiffs, individually and on behalf of the class, for injunctive relief under the FDUTPA. *See* D.E. 52. Accordingly, Plaintiffs seek to certify one class for monetary damages under Rule 23(b)(3) and one class for injunctive relief under Rule 23(b)(2), jointly defined as:

> All individuals and entities in the fifty United States and the District of Columbia that purchased and/or used new SSBS Vests from Defendant or one of Defendant's authorized distributors or sales representatives, and who continue to purchase and/or use such vests up to the date a Class is certified by this Court.
> D.E. 89 at 1 (emphasis added).

As to Count Four's FDUTPA damages claim, the amended complaint states that both the IUPA and the OSTA are Plaintiffs "for purposes of injunctive relief sought in the Fourth Claim for Relief." D.E. 52 ¶¶ 3-4; *see supra* note 1. Accordingly, as neither associational Plaintiff is a named Plaintiff for purposes of the monetary damages claim under the FDUTPA and as the individual Plaintiffs, having only purchased two models of ballistic vests, do not have standing to bring a claim on behalf of a class of "All individuals and entities in the fifty United States and the District of Columbia that purchased and/or used new SSBS Vests from Defendant," D.E. 89 at 1, the FDUTPA damages class must also be dismissed for lack of standing. However, as with the breach of warranty claims in Counts one through Three, the individual Plaintiffs have standing to assert the FDUTPA damages claims individually. *See supra* note 6.

---

[6] The injury in fact is the purchase price of the defective vest, this harm is fairly traceable to Defendant as manufacturer of the vest and damages would remedy the harm by making the individual Plaintiffs' whole. *Spokeo, Inc.*, 136 S.Ct. 1540.

16

This leaves the IUPA and the OSTA's claims for injunctive relief under the FDUTPA individually, and on behalf of the class. Despite Plaintiffs' allegations to the contrary, the amended complaint alleges both that the organizations themselves and their members suffered an injury-in-fact:

> Named Plaintiff OSTA has incurred direct financial loss, including having paid for the replacement of defective SSBS Vests. Named Plaintiff IUPA has similarly incurred time and expense stepping forward to address this safety issue on behalf of its constituents, including those in Florida with SSBS Vests.
> D.E. 52 ¶ 61

This implicates both Article III standing and associational standing. *See Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 342–43 (U.S. 1977) (explaining that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members. . . ."). The Court will first determine whether the OSTA and the IUPA have Article III standing to bring Count Four individually and on behalf of the class based on the injury-in-fact they themselves suffered, before turning to their associational standing to bring Count Four individually and on behalf of the class, based on injuries-in-fact sustained by their members.

### 5. OSTA & IUPA – Article III Standing

To establish Article III standing a party must allege an injury in fact. *Spokeo,* 136 S. Ct. 1540. The injury-in-fact that the OSTA alleges it suffered is "financial loss in time and money, including purchasing and providing replacement vests for the defective SSBS Vests . . . ." D.E. 52 ¶ 3. The injury-in-fact that the IUPA alleges it suffered is:

> IUPA has directly incurred financial loss in time and money in connection with the unacceptable safety risks the defective SSBS Vests have subjected its members to, including many of its members in Florida that have purchased or wear the defective SSBS Vests.
> D.E. 52 at 23.

As the IUPA has not alleged that it, as an entity, has purchased or used any vests, it does not have Article III standing to raise claims on behalf of a class defined as "[a]ll individuals and entities in the fifty United States and the District of Columbia that purchased and/or used new SSBS Vests from Defendant," D.E. 89 at 1. *Garcia*, 43 F. Supp. 3d 1359, 1390.

As to the OSTA, there is no allegation that it as an organization has purchased any specific model of SSBS vest. To be sure, there is a generic statement in the amended complaint that the OSTA incurred financial loss in "purchasing and providing replacement vests for the defective SSBS Vests . . . ." D.E. 52 ¶ 3. However, in order for the OSTA to have standing to bring Count Four on behalf of "[a]ll individuals and entities in the fifty United States and the District of Columbia that purchased and/or used new SSBS Vests from Defendant," D.E. 89 at 1, the Court would have to construe this allegation as asserting that the OSTA, as an organization, purchased every one of Defendant's new SSBS vest in the class period. *See Garcia,* 43 F. Supp. 3d at 1390 ("[I]n the Eleventh Circuit, a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase[.]'") (quoting *Toback*, No. 13-80526-CIV, 2013 WL 5206103 at *5). Such a broad construction is not warranted given the complete lack of any corroborating allegations in the complaint. The amended complaint does not mention a single model of Defendant's ballistic vest that the OSTA purchased, nor when it purchased such vests, nor who purchased them or from whom they were purchased.

Thus, neither the OSTA nor the IUPA have Article III standing to bring Count Four's claim for injunctive relief on behalf of the class based on injuries-in-fact they sustained as organizations. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001) ("[W]e must evaluate standing based on the facts alleged in the complaint, and we may not 'speculate concerning the existence of standing or piece together support for the plaintiff.'") (quotation omitted).

Moreover, unlike the individual Plaintiffs who have standing to bring their individual claims because they alleged that they purchased a particular model of Defendants' SSBS vests, because the IUPA and the OSTA have not alleged that they purchased any such model, they also lack standing to bring Count Four individually.

### 6. OSTA & IUPA - Associational Standing

#### i. Associational Standing to Bring Count Four on Behalf of the Class

While the OSTA and the IUPA may not have standing to bring claims based on an injury-in-fact they themselves suffered, they may have associational standing to bring suit on behalf of their members based on injuries-in-fact their members suffered. *See Hunt,* 432 U.S. 333. An association has standing to sue on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[7]

---

[7] As discussed below, the Court does not find that any member of either the IUPA or OSTA has standing in their own right to bring the injunctive relief claims and therefore neither the IUPA nor the OSTA have associational standing to bring Count Four. However, even if they had adequately pled all other elements of associational standing, the Court would not find that the OSTA and the IUPA have associational standing because "the claim asserted [or] the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *Washington*, 959 F.2d at 1569 (explaining that a district court has broad discretion in deciding whether to certify a class). This third element of associational standing is prudential, not constitutional. *United Food*, 517 U.S. at 557. The claim asserted in Count Four is that Defendant engaged in misleading and unfair conduct in violation of the FDUTPA, including, *inter alia*: informing members that new shoulder straps would correct the defects, charging for replacement shoulder straps in violation of the warranty, selling SSBS vests represented to be new but with old manufacture and warranty-issue dates, failing to honor warranties, and failing to replace defective vests, leading to increased risk of injury from the defective vests. D.E. 52 at 32. The amended complaint does not allege that every OSTA member was subject to the same "deceptive or misleading conduct," nor could it, as the members of the OSTA and the IUPA are very different in terms of occupation, rank, and location. Some members of the OSTA are sergeants, some are troopers, and others are, dispatchers who presumably do not wear ballistic vests. In the case of the IUPA, some are labor activists and law enforcement support personnel located in different states. *See* D.E. 52. Thus, in order to determine whether Defendant engaged in "deceptive, misleading and unfair conduct," the individual member of the OSTA or the IUPA would need to come forward and explain, *inter alia*, what deceptive conduct he, she, or it was subject to, what vest he or she purchased or used, whether it has fallen apart, when he or she purchased it, and what warranties were provided with the vest. Given these differences in circumstances, the Court finds that it would not be prudent to grant associational standing to the OSTA and IUPA. *See Mediterranean Villas Condo. Ass'n, Inc. v. Moors Master Maint. Ass'n, Inc.*, No. 11-23302-CIV, 2012 WL 882508, at *3 (S.D. Fla. Mar. 14, 2012) ("Because each unit owners' circumstances are different, the participation of [Plaintiff's] individual members is required to properly resolve the individualized claims.").

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt*, 432 U.S. at 343).

Here, the OSTA and the IUPA lack associational standing. First, as to the OSTA's and the IUPA's associational standing to bring Count Four on behalf of the class, the putative class for FDUTPA injunctive relief in the amended complaint does not limit the class to OSTA and IUPA members. Instead, it includes "<u>All individuals and entities</u> in the fifty United States and the District of Columbia that <u>purchased and/or used new SSBS Vests from Defendant</u>." D.E. 89 at 1 (emphasis added). Nor does the amended complaint allege that all users and purchasers of Defendant's SSBS vests are IUPA and/or OSTA members. *See* D.E. 52. Accordingly, to the extent the OSTA and the IUPA are suing on behalf of the FDUTPA injunctive relief class, the OSTA and the IUPA are not suing to advance the rights of their members and they therefore lack associational standing. *See In re: Takata Airbag Prod. Liab. Litig.,* No. 14-24009-CV, 2016 WL 1266609, at *6 (S.D. Fla. Mar. 11, 2016) (explaining that association lacked associational standing where the "[c]omplaint does not limit the automotive recycler putative classes only to [Plaintiff's] members. . . Rather, the automotive recycler putative classes include '[a]ll automotive recyclers in the United States,' '[a]ll automotive recyclers in [27 states],' . . . that meet certain criteria unrelated to being [a member of Plaintiff's association] . . . Nor does the Complaint assert that all automotive recyclers are members of [Plaintiff's association] . . . Accordingly, [Plaintiff] is not suing pursuant to the rights of its members and thus, associational standing is not available . . . ."); *Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("Even in the absence of injury to itself, an association may have standing <u>solely as the representative of its members</u>.") (emphasis added); *cf. Doe v. Stincer,* 175 F.3d 879, 886 (11th Cir. 1999) (holding that

organization could sue on behalf of its constituents because they "possess[ed] all indicia of membership in an organization") (quoting *Hunt*, 432 U.S. at 344-45).

Thus, the OSTA and the IUPA lack associational standing to bring a claim for injunctive relief under the FDUTPA on behalf of the class described in the amended complaint. Accordingly, Count Four's FDUTPA injunctive relief claim brought on behalf of the class is dismissed without prejudice for lack of standing and the class cannot be certified. The remaining question is whether the IUPA and the OSTA have standing to sue individually based on injuries-in-fact sustained by their members. For reasons discussed below, they do not.

ii.   Associational Standing to Bring Count Four Individually

a.   The IUPA

An association has standing to sue on behalf of its members when, *inter alia*, "its members would otherwise have standing to sue in their own right . . . ." *United Food*, 517 U.S. at 553 (quoting *Hunt*, 432 U.S. at 343). This necessitates an inquiry into whether any member of the IUPA or the OSTA has standing to bring the FDUTPA injunctive relief claim on his or her own. The IUPA lacks associational standing because none of its members have Article III standing to sue in their own right as there is no allegation in the amended complaint that any IUPA member purchased any specific products and no member can allege an injury-in-fact for products they have not purchased. *Toback*, No. 13-80526-CIV, 2013 WL 5206103. To be sure, the amended complaint asserts that "many of its members . . . have purchased or wear the defective SSBS vests," D.E. 52 at 4, but the amended complaint does not allege which IUPA members purchased which vests, when they purchased the vests or from whom they purchased the vests. This is particularly troublesome given that Plaintiffs admit "many SSBS Vests are purchased by departments or agencies that are not the actual user of the vests . . . ." D.E. 136 at

16. Thus, as a party does not have standing to bring a claim for a product he or she did not purchase, and as the amended complaint does not allege which of Defendants' SSBS vests were purchased by any IUPA member, no member of the IUPA has Article III standing "to sue in their own right." *Hunt*, 432 U.S. at 343; *see Dapeer*, 95 F. Supp. 3d at 1373 (explaining that plaintiff lacked "Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used."); *see also Garcia v. Clarins USA*, Inc., No. 14-21249-CIV, 2014 WL 11997812, at *3 (S.D. Fla. Sept. 5, 2014) (explaining that in a FDUTPA claim, "Plaintiff's standing is limited to claims relating to Vital Light Night Revitalizing Anti–Ageing Cream and Body Lift Cellulite Control products because Plaintiff did not purchase the other products and cannot allege an injury in fact as to those products."). Accordingly, the IUPA lacks associational standing to bring Count Four on behalf of the class or individually as a representative of its members.

### b.  The OSTA

In contrast, certain members of the OSTA, the individual Plaintiffs, *have* alleged that they purchased specific models of Defendant's vests and therefore the failure to purchase the defective product is not an impediment to their standing under Article III standing to sue "in their own right". *See Toback*, No. 13-80526-CIV, 2013 WL 5206103.[8]

In order to establish Article III standing, an individual OSTA member needs to allege that he or she "suffered an injury in fact . . ." *Spokeo,* 136 S.Ct. at 1540. The injuries-in-fact that the

---

[8] The Court notes that this creates some inconsistency with the *Toback* requirement in that an individual Plaintiff in a consumer class action cannot represent a class including individuals who haven't purchased the same item, but that same Plaintiff can potentially enable an organization to pursue a claim on behalf its members who have not purchased the same item. Moreover, the Court doubts the propriety of permitting Plaintiffs to exclude the individual plaintiffs from Count Four individually in the amended complaint, while simultaneously allowing them to participate as members of the OSTA.

OSTA's members suffered as related to the OSTA's claim for injunctive relief in Count Four are not clear. But, the Court construes the injury-in-fact to be the increased risk of serious injury or death from using the defective vests.[9] *See, e.g.,* D.E. 52 ¶¶ 103-04 ("Here, the potential life-threatening injury to class members outweighs whatever damage the requested injunction may cause PBE . . . If the injunctive relief is not provided, then irreparable injury to some users, i.e., death or serious bodily injury, may result."); D.E. 52 ¶ 101 ("Plaintiffs and class members show that they are entitled to affirmative injunctive relief requiring Defendant to cease selling the defective SSBS Vests and to notify all class members of the defects in the vests and the life-threatening danger associated with continued use . . . .") (emphasis added). However:

> The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. 'In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'
>
> *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting

*Wooden*, 247 F.3d at 1284 (11th Cir.2001)); *see also Dapeer*, 95 F. Supp. 3d at 1373 ("Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction . . . it cannot supplant Constitutional standing requirements.") (quotation omitted).

   While the individual Plaintiffs may have purchased and worn Defendant's defective vests in the past, the amended complaint is devoid of any allegations that the individual Plaintiffs *continue to wear* the defective vests. And the record evidence is to the contrary: the deposition testimony of the individual Plaintiffs is that they no longer wear Point Blank SSBS vests, and some have no intention of ever purchasing or wearing such vests in the future:

---

[9] The amended complaint also states that the members sustained monetary damages in the amount of the purchase price of their vests, but this injury is related to their FDUTPA damages claim and is not relevant to the injunctive relief claim.

Q. Okay. How about the vest that you're currently wearing right now, where did you get that vest from?

A. Roy Tay- -- Roy Taylor's.

Q. And is that a Point Blank vest?

A. No, sir.

D.E. 122-20 at 86 (Rohner Deposition).

Q. So you continued to wear the Point Blank vest . . . through say the time you got your replacement vest; is that correct?

A. I wore it till I got my replacement vest . . .

Q. [i]s this an order that was placed for your - - the replacement vest . . . and that's the replacement vest to your Point Blank vest?

A. Correct . . .

Q. At that time how did you decide what type of replacement vest to get?

A. Well, I was able to eliminate Point Blank off my list, so I went in there and looked at what they had to offer. And I had previously had ABA before, that type of style vest, so I looked at it and it was nice so I picked it. And I didn't want the same SSBS type of system . . .

Q. Well, do you have any intent anytime soon of buying a Point Blank vest with the SSBS system that currently exists?

A. No . . .

D.E. 122-19 at 162-63, 195-99 (Purpura Deposition).

Q. Did you acquire a -- a replacement vest for your Point Blank vest in December of 2016?

A. Yes . . .

Q. And is this a copy of the invoice for I guess what would be the order of that vest?

A.· Yes.

Q. And was it a Razor vest, a Level II?

A. Made by Armor Express, yes . . .

Q. Okay. And up until the date that your – your Armor Express body armor vest arrived, did you wear the Point Blank vest?

A. Yes.

Q. And you would have worn the Point Blank Vest at work up until that time –

A. Yes.

D.E. 125-3 at 86, 90 (Koontz Deposition).

Therefore, as none of the individual Plaintiffs continue to wear the defective SSBS vests

Plaintiffs have not shown a sufficient likelihood that the individual Plaintiffs will be affected by

the alleged increased risk of serious injury or death from wearing the defective vests in the

future. *Wooden*, 247 F.3d at 1284. Accordingly, the individual Plaintiffs lack standing to bring

Count Four's FDUTPA injunctive relief claim "in their own right," and the OSTA therefore

lacks associational standing to assert the FDUTPA injunctive relief claim on behalf of its members. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." (second alteration in original) (quotation omitted); *see, e.g., Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1354 (S.D. Fla. 2014) (holding plaintiffs lacked standing to seek FDUTPA injunctive relief claim to enjoin defendant from "falsely" labelling its beer where plaintiffs did not allege that they still purchased the beer); *Seidman v. Snack Factory, LLC*, No. 14-62547-CIV, 2015 WL 1411878, at *5 (S.D. Fla. Mar. 26, 2015) ("[P]laintiff lacks standing to pursue the requested injunctive relief because he has not alleged intent to purchase Defendant's Pretzel Crisps in the future."); *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012) ("In light of plaintiffs' avowed intention to refuse thimerosal-preserved vaccines, plaintiffs cannot show that they face a 'certainly impending,' or even likely, risk of future physical injury from thimerosal in vaccines."); *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *14 (S.D. Ohio Oct. 4, 2016) (holding plaintiffs lacked standing because "Plaintiffs are aware of their purported injuries and attribute those injuries to Old Spice deodorants, it is not plausible that Plaintiffs would purchase the product again."); *Tomasino v. Estee Lauder Companies Inc.,* 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("While Tomasino suggests that she remains a potential Estee Lauder customer and is likely to be misled again . . . she has not alleged a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase ANR products again.").

The failure to plead a future injury is sufficient to conclude that the OSTA lacks associational standing to bring Count Four. However, even if the individual Plaintiffs had alleged

that they continued to wear the vest, the alleged injury from wearing the defective vest is not

"certainly impending." *Clapper*, 568 U.S. 398, 409 ("Although imminence is concededly a

somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the

alleged injury is not too speculative for Article III purposes—that the injury is certainly

impending."). The Court finds the First Circuit's discussion in *Kerin v. Titeflex Corp.*, 770 F.3d

978, 983 (1st Cir. 2014) illustrative. In *Kerin*, plaintiff alleged that the defendant's stainless steel

tubing was defective in that it was subject to catching fire if it was struck by lightning, thereby

increasing the plaintiff's risk of injury. 770 F.3d 978. The First Circuit explained that:

> not all risks constitute injury . . . were all purely speculative 'increased risks' deemed
> injurious, the entire requirement of 'actual or imminent injury' would be rendered moot,
> because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk
> of future injury.

> *Id.* at 983 (quoting *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161

(D.C.Cir.2005)). In holding that the increased risk of injury from fire was too speculative to

confer standing, the First Circuit held that while it "agree[d] with Kerin that the risked harm, if

actualized, could be severe . . . whether a risk is speculative also depends on the chances that the

risked harm will occur." 770 F.3d at 983. The First Circuit explained that although the plaintiff

cited to 141 instances of fires involving lightning and the tubing, he "failed to allege facts

sufficient to even calculate or estimate the risk" because he did not allege any "information that

would help [the First Circuit] make sense of this figure, like the frequency of lightning strikes,

the proportion of homes struck by lightning, the relevant time frame, or the likelihood of

lightning fires in homes without [the tubing]," and it was unclear that any actual injuries were

caused by the tubing. *Id.* Lastly, the First Circuit noted that:

> This is not a case of regulatory silence, but of regulatory approval of the "defective"
> product, after a study of the risks. Although not dispositive, this consideration carries
> particular weight because the political branches have, after study of the particular risk in
> question, concluded that such risk is both permissible and manageable.

*Id.* at 984.

The same considerations are present here. The increased risk of "life-threatening injury" from wearing the defective vests is too abstract and speculative. Firstly, the "life-threatening injuries" themselves are indeterminate and given the variety of situations that police officers encounter, the failure of the vest could result in a multitude of possible injuries from minor to serious. Secondly, whether a "life-threatening" injury will occur depends on a number of external contingencies: it requires the individual Plaintiff to be in an armed conflict or similar situation where the vest failing would lead to an increased risk of serious injury, it requires the vest to fail in that situation, and it requires the injury to have resulted partly from the vest failure as opposed to the dangerous situation itself. As in *Kerin* the amended complaint lacks sufficient facts to enable the Court to calculate this risk, such as: how many OSTA members have been injured as a result of the defective vests failing, how many OSTA members wear the defective vests, how many of the OSTA's members' vests have failed, how frequently, and in what circumstances.[10] Lastly, Defendant's SSBS vests are approved by the National Institute of Justice (the United States Department of Justice's development and evaluation agency), D.E. 122-4 ¶ 15, and "no SSBS vest has ever failed to stop a ballistic threat as far as PBE is aware." D.E. 125-1 at 3 (citing D.E. 125-3 ¶ 5). Thus, the increased risk of future injury is too speculative to be a "certainly impending" injury sufficient to confer standing for the injunctive relief claim. *Clapper*, 568 U.S. at 410 (holding that threatened injury must be "certainly impending" and that plaintiffs lacked standing to challenge warrantless wiretapping because the actual injury would require a "highly attenuated chain of possibilities," including the plaintiffs' actual participation

---

[10] The Court notes that the Plaintiffs' allege that the individual Plaintiffs' vests have "fallen apart in the field", D.E. 52, and that in Plaintiffs Motion to Certify, Plaintiffs' alleged that "some sparse records do exist" including complaints and that 600 replacement straps were sent to users, D.E. 89 at 5 n. 11., this is not sufficient factual information to permit the Court to calculate or estimate the risk because there is no discussion or "information that would help [the Court] make sense of [these figures]. *Kerin*, 770 F.3d at 983.

in a call that was wiretapped); *Kerin*, 770 F.3d 978; *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 937 (C.D. Cal. 2009) ("[C]laims that are deemed <u>too speculative to support the</u> <u>injury component of standing often depend on a chain of speculative contingencies that must</u> <u>occur for the alleged injury to manifest itself</u>.") (quotation omitted) (emphasis added); *see also Georgine v. Amchem Prod.*, Inc., 83 F.3d 610, 636 (3d Cir. 1996) (Wellford, H., concurring), aff'd sub nom. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 (1997) ("Fear and apprehension about a possible future physical or medical consequence of exposure to asbestos is not enough to establish an injury in fact."); *see also Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1093–94 (D. Kan. 2015); ("The Court cannot find that an increased risk of future gun violence in itself is a concrete and particularized injury . . . For any particular individual, the likelihood of being injured in a shooting is remote, and the time when any such injury might occur is entirely uncertain.").

Accordingly, as no member of the OSTA has standing to bring the FDUTPA claim for injunctive relief in its own right, the OSTA does not have associational standing to bring Count Four on behalf of its members. Thus, both the IUPA and the OSTA lack both Article III standing and associational standing to bring Count Four's injunctive relief claim and it must be dismissed without prejudice.[11]

**V.**     **Conclusion**

A.   <u>Claims Dismissed</u>

As Plaintiffs lack standing to bring their class claims in Counts One, Two and Four of the amended complaint, the Court dismisses those claims without prejudice for lack of standing and denies Plaintiffs' Motion to Certify without prejudice. *Cone Corp. v. Fla. Dep't of Transp.*, 921

---

[11] Even if the OSTA had standing to bring the FDUTPA injunctive relief claim individually based on injuries sustained by the individual Plaintiffs, the Court would lack jurisdiction over such claims. *See infra* pp. 28-29.

F.2d 1190, 1203 n. 42 (11th Cir.1991) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Vega v. T-Mobile USA, INC.*, 564 F.3d 1256, 1265 (11th Cir. 2009) ("For a district court to certify a class action, the named plaintiffs must have standing."); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

      B.   Remaining Claims and Jurisdiction

However, the individual Plaintiffs have standing to bring their breach of warranty claims in Counts One through Three and the FDUTPA damages claim in Count Four, arising out of their purchase of two models of Defendant's vests. Nevertheless, the Court does not have jurisdiction over these claims. In the amended complaint, Plaintiffs allege that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and that the amount in controversy exceeds $5,000,000. § 1332(d)(2) provides:

> (2) The district courts shall have original jurisdiction of any civil action in which the **matter in controversy exceeds the sum or value of $5,000,000**, exclusive of interest and costs, **and is a class action** in which--
>> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.
> 28 U.S.C. § 1332 (emphasis added).

As the Court has denied Plaintiffs' Motion to Certify without prejudice, the action is no longer a class action; it is a claim for breach of warranty and FDUTPA damages by three individual Plaintiffs. Accordingly, the Court no longer has jurisdiction over the action pursuant to § 1332(d)(2).

There are no other bases for the Court to exercise jurisdiction. Plaintiffs do not allege that the Court has "federal question" jurisdiction under 28 U.S.C. § 1331, nor are there any federal claims that would provide such jurisdiction. As to diversity jurisdiction under § 1332(a), complete diversity is present, but there is no plausible allegation in the amended complaint that the amount in controversy exceeds $75,000. The amended complaint's assertion that the amount in controversy exceeds $5,000,000 is plainly tied to Plaintiffs' allegation that the Court has jurisdiction pursuant to § 1332(d)(2). *See* D.E. 52 ¶ 10 ("This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action with in excess of 100 class members . . . ."). Plaintiffs provide no other indication of the amount in controversy sought by the three individual Plaintiffs other than a claim that the average cost for each vest is $700. *See* D.E. 52 ¶ 66(D) ("[T]he amount which may be potentially recovered by individual members of the Class -- up to approximately $700, representing the average purchase price of an SSBS Vest . . . ."). Accordingly, as Plaintiffs have not adequately pled that the amount in controversy exceeds $75,000, the Court lacks diversity jurisdiction. Lastly, the Court declines to entertain supplemental jurisdiction over the claims. *See Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir.2004) (explaining that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (per curiam). As the Court is "powerless to act beyond its statutory grant of subject matter

jurisdiction," *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001), it must dismiss the action without prejudice. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 862 (11th Cir. 2012) ("We affirm the dismissal on the grounds that absent certification as a class action, the district court lacks subject matter jurisdiction over [Plaintiff's] individual claim.") (per curiam); *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV-COHN, 2014 WL 1274119, at *3 (S.D. Fla. Mar. 27, 2014), aff'd, 621 F. App'x 945 (11th Cir. 2015) (dismissing case for lack of subject matter jurisdiction under § 1332(d) after denying motion for class certification); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677 (S.D.Fla.2008) (same). Therefore, the Court dismisses the action without prejudice.[12] Accordingly, it is

---

[12] The Court agrees with Defendant that the Motion to Certify appears to be deficient in other material ways, which the Court will briefly address. Firstly, the classes Plaintiffs seek to certify are not ascertainable or clearly defined. *See, e.g.*, *Rink*, 203 F.R.D. at 659. The class is overbroad because it includes all individuals who purchased new SSBS vests, including vests that are not defective and contains no time limit. Applying this class definition to ascertain class members would involve substantial individual inquiry into who purchased the vests and when, and whether they suffered any physical injury from the defective vest since the class excludes such individuals. To be sure, Plaintiffs argue the class can be ascertained from Defendants' sales records, D.E. 89 at 27, but the Court is not convinced this would not involve substantial individual inquiry into both purchase and usage, particularly as "many SSBS Vests are purchased by departments or agencies that are not the actual user of the vests . . . ." D.E. 136 at 16; *see Gregware*, 2014 WL 12531536, at *3 ("Here, based on Plaintiff's class definition, the Court would have to inquire into whether each consumer purchased the Product, whether each consumer used the Product . . . To prove purchase, each potential class member would have to submit a receipt, packaging of the Product or some other evidence showing that he or she purchased the Product. It is unclear how each consumer would prove usage . . . ."); *Shepherd v. Vintage Pharm., LLC*, 310 F.R.D. 691, 696 (N.D. Ga. 2015) ("Defendants assert that the members of the proposed class and subclasses are not "ascertainable" because there is no way of knowing which consumers purchased or digested birth control pills that had been improperly packaged. Plaintiffs have not proffered any means of identifying class members. Defendants' records show only products sold to distributors and retailers, but not to individuals."). Thus the class definition does not provide the Court with a manageable means of determining the class members and on this basis alone the Court would find it should not be certified.

Secondly, the Court agrees with Defendant that Plaintiffs are improperly seeking to broaden the scope of the proposed class in the amended complaint beyond purchasers of Defendant's SSBS vests to purchasers and users of Defendants' SSBS vests. *Compare* D.E. 52 ¶ 64, *with* D.E. 89 at 1; *see Bouton v. Ocean Properties, Ltd*, 322 F.R.D. 683, 693 (S.D. Fla. 2017) ("Although a plaintiff may seek to certify a class definition narrower than the one proposed in the operative pleading without a new claim for relief, the converse is not allowed."). This broadened class definition amounts to an "eleventh-hour amendment of the pleadings" beyond the June 8, 2018, deadline set by the Court. *See Bouton*, 322 F.R.D. at 693. To be sure, the amended complaint contains some references to "users." *See* D.E. 52. However, these stray references do not convince the Court that the amended complaint sought to bring

ORDERED AND ADJUDGED that the action is DISMISSED WITHOUT PREJUDICE.

It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case. All future hearings are CANCELLED and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers, Miami, Florida, this _26th__ day of October, 2018.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

---

a claim on behalf of all users of Defendants' new SSBS vests, as opposed to purchasers. Plaintiffs' expanded class definitions in the Motion to Certify encompass all Counts and would impermissibly broaden the scope of the claims to include all users of the new SSBS vests, regardless of how they acquired the vest, their profession, or how frequently they use the vest. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013) (explaining that the "class definition is a tool of case management" that "settles the question of who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability").

Lastly, and flowing from the Court's discussion in this order "[i]t should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *Prado-Steiman*, 221 F.3d at 1279. Here, the named representatives of the breach of warranty and FDUTPA monetary damages classes, the individual Plaintiffs, do not have standing to raise claims on behalf of all users and purchasers of Defendant's new SSBS vests they are therefore not typical of the classes. The same is true of the OSTA and the IUPA in the FDUTPA injunctive relief claim, particularly as they are multi-state organizations and many of the members are individuals and police departments.